## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ALICIA R.,**[1]

   **Plaintiff,**

            **Case No. 2:22-cv-2956**
  **v.**          **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**[2]

   **Defendant.**


## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Alicia R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the Commissioner's partially favorable decision on that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

On July 25, 2019, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since November 24, 2018. R. 101, 110, 203–04. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 113–18, 121–24. Plaintiff sought a *de novo* hearing before

an administrative law judge ("ALJ"). R. 125–27. ALJ Beth Shillin held a hearing on February

24, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational

expert. R. 55–84. In a decision dated March 1, 2021, the ALJ concluded that Plaintiff was

disabled within the meaning of the Social Security Act ("the Act") from her alleged onset date of

November 24, 2018, through July 16, 2020, but that her disability ended on July 17, 2020, and

she has not been disabled under the Act since that date. R. 22–47. That partially favorable

decision became final when the Appeals Council declined review on October 21, 2021. R. 1–7.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 13, 2023,

Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to

28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On that

same day, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for

disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing the Commissioner's decision on an application for Social Security disability

benefits, this Court has the authority to conduct a plenary review of legal issues decided by the

ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's

factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228

F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has

explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from an adverse determination, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

If a claimant is determined to be disabled, the Commissioner's regulations also require a determination of the length of that period of disability. 20 C.F.R. § 404.1594(a). Ordinarily, if there has been any "medical improvement" in the claimant's disabling impairment(s) and, if that medical improvement "is related to [the claimant's] ability to work," then the claimant's period of disability will end if that medical improvement enables the claimant to engage in substantial gainful activity. *Id*.

Where the underlying medical condition continues, there arises "a presumption of continuing disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1238 (3d Cir. 1983). At that point, "the [Commissioner] must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." *Id* at 1237. "Thus, once the claimant produces evidence of continuing disability, the burden of proof, or more properly the risk of non-persuasion, shifts to the [Commissioner] to produce evidence that the claimant is capable of undertaking gainful activity in order to rebut the presumption of continuing disability." *Keegan v. Heckler*, 744 F.2d 972, 975 (3d Cir. 1984). Finally, "'once having found a disability, the [Commissioner] may not terminate the benefits without substantial evidence to justify so doing.'" *Kuzmin*, 714 F.2d at 1238 (quoting *Miranda v. Sec'y of Health, Educ. and Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was a younger individual on her established disability onset date of November 24, 2018. R. 39. Plaintiff meets the insured status requirements of the Act through December 31, 2024. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

activity between November 24, 2018, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments from November 24, 2018, through July 16, 2020: degenerative disc disease of the lumbar spine; status-post laminectomy/fusion of L4-5 and L5-S1; drop foot on the right with numbness; depression; and anxiety. *Id.* The ALJ also found that Plaintiff's status-post ankle fracture with open reduction and internal fixation ("ORIF") and post-traumatic stress disorder ("PTSD") were not severe. *Id*.

At step three, the ALJ found that, from November 24, 2018, through July 16, 2020, Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 31–33.

At step four, the ALJ found that, from November 24, 2018, through July 16, 2020, Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 33– 39. The ALJ also found that, from November 24, 2018, through July 16, 2020, this RFC did not permit the performance of Plaintiff's past relevant work as a mixing machine operator; a packager, machine; and a stores, laborer. R. 38–39.

At step five, the ALJ found that, from November 24, 2018, through July 16, 2020, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. R. 39–40. The ALJ therefore concluded that Plaintiff was under a disability, as defined by the Act, from November 24, 2018, through July 16, 2020. R. 40.

However, the ALJ went on to consider whether Plaintiff remained disabled as of July 17, 2020. R. 40–47. The ALJ found that medical improvement had occurred as of that date and that this medical improvement related to Plaintiff's ability to work and resulted in an increase in her RFC. R. 43. Although the ALJ found that this RFC still did not permit the performance of

Plaintiff's past relevant work, R. 46, the ALJ relied on the testimony of the vocational expert to find that, beginning on July 17, 2020, a significant number of jobs—*i.e.*, approximately 12,000 jobs as cutter and paster of press clippings, approximately 5,000 jobs as an assembler, and approximately 6,000 jobs as a bench hand—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and this RFC. R. 46–47. The ALJ therefore concluded that Plaintiff's closed period of disability ended on July 16, 2020, and that she was not disabled within the meaning of the Act from July 17, 2020, through the date of the decision. R. 47.

Plaintiff disagrees with the ALJ's partially favorable decision and objects to the determination that Plaintiff's closed period of disability ended on July 16, 2020; she asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 11. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10.

## IV.    DISCUSSION

### A.    Medical Improvement

Plaintiff argues that the ALJ erred in finding that Plaintiff's medical conditions had improved as of July 17, 2020. *Plaintiff's Brief*, ECF No. 8, pp. 20–22; *Plaintiff's Reply Brief*, ECF No. 11, pp. 1–2. This Court disagrees. By way of background, as previously discussed, the ALJ first found that Plaintiff was disabled between November 24, 2018, and July 16, 2020. R. 31–40. During this closed period of disability, the ALJ found, *inter alia*, that Plaintiff suffered

the following severe impairments: degenerative disc disease of the lumbar spine, status-post laminectomy/fusion of L4-5 and L5-S1, drop foot on the right, depression, and anxiety, but that none of these impairments, alone or in combination, met or medically equaled a listed impairment. R. 31–33. The ALJ also found that Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, I find that, from November 24, 2018 through July 16, 2020, the claimant could perform sedentary work with the following limitations: The claimant cannot climb ladders, scaffolds, or ropes. She cannot work around heavy machinery or heights, and cannot do any crawling and kneeling. The claimant can occasionally climb stairs and ramps, and occasionally perform crouching, stooping and balancing. The claimant is limited to simple and unskilled tasks. The claimant can have no exposure to extremes of temperature, particularly cold. The claimant can do only occasional overhead reaching; *and must elevate her legs to a foot off the ground.*

R. 33 (emphasis added). In reaching this determination, the ALJ considered years of record evidence, including, *inter alia*, that Plaintiff had a history of lower back pain and radiculopathy and, on August 18, 2017, and had undergone a spinal cord stimulator implant after unsuccessful conservative treatment; that Plaintiff's pain had returned after the implant had provided initial relief and it was noted on December 11, 2018, that Plaintiff had diffuse lumbosacral tenderness, poor lumbosacral range of motion, and positive straight leg raising, with significant back pain on thigh flexion; that progress notes had reflected that from December 20, 2018 to February 12, 2019, Plaintiff was followed for chronic lower back pain with radiculopathy and that a cane had been prescribed; that progress notes from April 9, 2019, had reflected limited motion of the lumbar spine with pain, 3+/5 to 4/5 strength in the lower extremities, and positive straight leg raising bilaterally; that on April 17, 2019, Plaintiff had undergone L4-S1 fusion surgery; that although she had reported improvement in her pain, she went to the ER on June 6, 2019, due to lower back pain; that a CT scan had revealed multilevel disc disease and facet arthropathy of the

10

lumbar spine, worse at L4-5, with a disc osteophyte causing at least moderate bilateral neural foraminal encroachment; that progress notes from July 11 to December 20, 2019, had reflected that Plaintiff was followed for post-laminectomy syndrome and was ambulating with a cane and that she had lower back pain, limited motion of the lumbar spine, lumbar paraspinal tenderness, and decreased sensation on the right at L4 and L5, and reported right foot numbness; that as of January 13, 2020, Plaintiff had only 25% range of motion in her spine but that, by April 3, 2020, she had full motion of the lumbar spine, normal gait and station, and normal posture; that a July 16, 2020, examination had shown full range of motion in the neck, the lumbar spine, and all extremities, with fewer reports of pain and good response to Cymbalta; that progress notes from August 2020 had reflected a normal gait and station, normal posture, normal spinal contour, and full range of motion of the lumbar spine and the lower extremities, with only mild lumbar paraspinal tenderness; that psychiatric treatment notes from September 24, 2020, reflected that Plaintiff had a very quick response to mental health treatment and overall was more upbeat and in better condition. R. 35–36; *see also* R. 26–30 (reflecting ALJ's summary of record evidence, including, *inter alia*, that a July 16, 2020, annual physical examination revealed, among other things, that Plaintiff denied any worsening symptoms and stated that Cymbalta had helped with her neuropathic pain and that she had normal range of motion with 4/5 lower extremity strength bilaterally; that while Plaintiff reported a depressed mood secondary to the loss of her job after her back surgery, her mood and thought content were noted as normal; that a January 25, 2020, consultative examination reflected, *inter alia*, that Plaintiff walked slowly with a cane and reported being very depressed because she could not do some of the things that she used to do and had to raise her legs and stay at home; that progress notes from September 24, 2020 to November 28, 2020, revealed that Plaintiff had been seen for major depressive disorder, single

episode, moderate, and an adjustment disorder with anxiety, and that she had responded well to having a daily schedule; that she had specifically reported on November 7, 2020, that she spent time with family and friends).

As previously noted, the ALJ further found that, from November 24, 2018, through July 16, 2020, Plaintiff's RFC precluded her performance of any past relevant work as well as other jobs that existed in the national economy. R. 38–40. The ALJ therefore concluded that Plaintiff was under a disability from November 24, 2018, through July 16, 2020. R. 40.

However, the ALJ went on to consider whether Plaintiff had experienced medical improvement, R. 40–47, and concluded that medical improvement had in fact occurred as of July 17, 2020:

### 14. Medical improvement occurred as of July 17, 2020, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

As discussed above, examinations from July 16, 2020 on seem to consistently show full range of motion in the neck, the lumbar spine and all extremities, with fewer reports of pain and good response to Cymbalta. For example, progress notes from August 25, 2020 note that the claimant had a normal gait and station, normal posture, normal spinal contour, and full range of motion of the lumbar spine and the lower extremities, with only mild lumbar paraspinal tenderness (Exhibit 29F, 4-6). With regard to the claimant's anxiety and depression, even the psychiatric treatment notes from September 24, 2020 to the present show that the claimant had a very quick response to mental health treatment and overall is more upbeat and in better condition (Exhibit 35F). The mental health treatment notes show that the claimant responded well to the idea of having a daily schedule with hourly things scheduled and that she was able to spend time with family (Exhibit 35F). Thus, the evidence indicates an improvement in the claimant's functional abilities as of July 17, 2020.

R. 43. The ALJ also found that this medical improvement related to Plaintiff's ability to work and resulted in an increase in her RFC and that, beginning on July 17, 2020, Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

After careful consideration of the entire record, I find that, beginning July 17, 2020, the claimant has had the following residual functional capacity: The claimant could

perform sedentary work with the following limitations: The claimant cannot climb ladders, scaffolds, or ropes. She cannot work around heavy machinery or heights, and cannot do any crawling and kneeling. The claimant can occasionally climb stairs and ramps, and occasionally perform crouching, stooping and balancing. The claimant is limited to simple and unskilled tasks. The claimant can have no exposure to extremes of temperature, particularly cold. The claimant can do only occasional overhead reaching. *The claimant needs the option to sit or stand or shift position at will within the workstation while remaining on task.*

*Id.* (emphasis added). Although the ALJ again found that this RFC precluded the performance of Plaintiff's past relevant work, the ALJ relied on the testimony of the vocational expert to find that, beginning on July 17, 2020, there were jobs that existed in significant numbers that Plaintiff could perform despite her lessened capacity. R. 46–47. The ALJ therefore concluded that Plaintiff's disability ended on July 17, 2020, and that she was not disabled from that date through the date of the decision. R. 47. The Court finds no error with the ALJ's analysis in this regard, including her finding of medical improvement beginning on July 17, 2020. *See* 20 C.F.R. § 404.1594(b), (c)(1); *Rocshon D. G. v. Kijakazi*, No. 21CV12889, 2023 WL 1750326, at *4 (D.N.J. Feb. 3, 2023) (concluding that substantial evidence supported the finding that the claimant experienced medical improvement where, *inter alia*, the initial disability determination was rooted in the claimant's inability to use his right hand and later records reflected marked improvement in that ability).

Plaintiff, however, challenges the ALJ's finding of medical improvement beginning on July 17, 2020, contending first, as to her physical impairments, that "the 8/25/2020 visit was via telemedicine and it is difficult to imagine how these physical findings were assessed virtually. R. 2227. Furthermore, the visits on 8/24/20 and 8/28/20 indicate that pain management visits were ongoing. R. 2227, 2173." *Plaintiff's Brief*, ECF No. 8, p. 21; *see also Plaintiff's Reply Brief*, ECF No. 11, p. 1 (characterizing as "suspect" the findings from the telemedicine visit on August 25, 2020). Plaintiff also argues that, "[o]verall, there is very little orthopedic treating medical

13

evidence after the end of the closed period, July 17, 2020. And there is nothing in the medical records on July 17, 2020 or in the days thereafter that logically indicates significant medical improvement." *Plaintiff's Brief*, ECF No. 8, p. 21; *see also Plaintiff's Reply Brief*, ECF No. 11, p. 2 (stating that, overall, there is "scant orthopedic evidence dated after the end of the closed period" and pointing to Plaintiff's hearing testimony that she "pay[s] for it" if she goes someplace and there is no recliner to elevate her legs). As to her psychological impairments, Plaintiff also observes that, on November 7, 2020, her psychologist noted "a discussion about not scheduling visits or activities back-to-back days and to not set '[t]oo high expectations will lead to disappointments and lower self esteem.'" *Plaintiff's Brief*, ECF No. 8, p. 21 (quoting R. 2544). Plaintiff also points to her November 14, 2020, report to her psychologist that "she was in a lot of pain that week, possibly due to weather, and had cancelled social gatherings and spent time in bed[,]" and to her November 21, 2020, report that "she was struggling with pain and nightmares that week." *Id*. (citing R. 2545–46).

Plaintiff has not persuaded this Court that this issue requires remand. As set forth above, the ALJ detailed record evidence reflecting limitations flowing from Plaintiff's physical and mental impairments that rendered her disabled for the period November 24, 2018, through July 16, 2020, but that Plaintiff experienced medical improvement beginning on July 17, 2020. R. 27–30, 34–38, 43–46. Although Plaintiff attacks as "suspect" the evidence from Plaintiff's telemedicine examination on August 25, 2020, *Plaintiff's Brief*, ECF No. 8, p. 21; *see also Plaintiff's Reply Brief*, ECF No. 11, p. 1, Plaintiff bases this attack on only her own speculation that such examinations have no probative value. *Id*. Notably, the treating provider explained why and how the examination was conducted on August 25, 2020:

> Today's visit was conducted via Telemedicine and the patient provided consent by logging in. The need for Telemedicine was needed because of concerns for

14

> infection risk related to COVID-19, following New Jersey state recommendations to limit social contact, including use of the physician's office, when other options (including home offices) are available. This synchronous care, was conducted with both video and audio feed. The patient was physically located at their home and I, the physician, was located in my office. *A thorough history, review of medical records and radiological studies was performed. Additionally, the examination on this chart was created based on visual inspection and patients self-reported symptoms.*

R. 2228 (emphasis added); *see also* R. 2227 ("Since our last consultation, she underwent and retrieved up-to-date xray's [sic] of her lumbar spine. The study, which I reviewed and interpreted, reveals status-post L4/S1 circumferential fusion with good hardware placement, no evidence of loosening, no instability, good lumbar lordosis, and solid fusion. Overall, the study is within normal limits and age appropriate."). Based on this record, the ALJ did not err in relying on this evidence when determining that Plaintiff had experienced medical improvement as of July 17, 2020.

Plaintiff also asserts that "the visits on 8/24/20 and 8/28/20 indicate that pain management visits were ongoing[,]" but she does not explain how this fact undermines the ALJ's finding of medical improvement as of July 17, 2020. *Plaintiff's Brief*, ECF No. 8, p. 21 (citing R. 2227, 2173); *cf. Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). In any event, the Court notes that the August 24, 2020, progress note advised Plaintiff to return to pain management on only an as needed basis. R. 2227–28 ("Given her lack of persistent leg symptoms, no further studies are needed. My recommendation is that she continue to treat her symptoms conservatively with medication. Therefore, she should return to pain management for

further treatment. She express[es] understanding, and *will follow-up on a PRN basis*.") (emphasis added); *see also Holt v. Comm'r of Soc. Sec.*, No. 3:12-CV-218, 2013 WL 2434432, at *4 n.7 (S.D. Ohio June 5, 2013), *report and recommendation adopted sub nom. Holt v. Colvin*, No. 3:12-CV-218, 2013 WL 3976558 (S.D. Ohio Aug. 1, 2013), *aff'd* (June 11, 2014) (noting that "'prn' stands for the Latin phrase, pro re nata, meaning 'as the occasion arises; when necessary.'") (citing *Stedman's Medical Dictionary* 776, 1562 (28th ed.2006)). Although Plaintiff was seen again for pain management on August 28, 2020, R. 2173, she concedes that "there is very little orthopedic treating medical evidence after the closed period, July 17, 2020." *Plaintiff's Brief*, ECF No. 8, p. 21. Notably, "the fact that Plaintiff continued to experience pain . . . does not, alone, demonstrate that she could not perform the work as identified in the RFC. It is well-settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled." *Ruggiers v. Saul*, No. 4:19-CV-1633, 2020 WL 4447927, at *6 (M.D. Pa. Aug. 3, 2020) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)); *cf. Marissa M. v. Comm'r of Soc. Sec.*, No. CV 21-18821, 2023 WL 143848, at *5–6 (D.N.J. Jan. 10, 2023) (finding that the ALJ properly found that the claimant's medical condition had improved after December 31, 2019, where, *inter alia*, "the ALJ found that the record contained limited medical evidence from January 1, 2020 onward—namely, the record contained only laboratory testing records, reflecting largely normal results" and, to the extent that she did continue to receive treatment, the ALJ considered that evidence, and therefore, "to agree with Plaintiff that the ALJ misinterpreted the evidence in the record or should have reached a different conclusion would require the Court to" improperly reweigh the evidence) (internal quotation marks omitted). Although Plaintiff insists that elevating her legs sometimes helps alleviate her pain and, if she does not, she is "going to pay for it for the next two or three days possibly[,]" *Plaintiff's Brief*,

ECF No. 11, p. 2 (citing R. 67) (internal quotation marks omitted), Plaintiff does not elaborate on what this testimony—*i.e.,* that she will "pay for it"—means. *Id*. Regardless, as previously explained, the fact that Plaintiff is not completely pain-free does not establish that she is disabled within the meaning of the Act, or that she did not experience medical improvement. *Cf. Marissa M.*, 2023 WL 143848, at *5–6; *Ruggiers*, 2020 WL 4447927, at *6.

As to her mental impairments, Plaintiff points to psychological progress notes but, again, does not explain how this evidence establishes that the ALJ erred in finding medical improvement as of July 17, 2020. *Plaintiff's Brief*, ECF No. 8, p. 21 (quoting R. 2544–46). In any event, Plaintiff's reliance on this evidence is unavailing where the ALJ expressly found that "psychiatric notes from September 24, 2020 to the present show that the claimant had a very quick response to mental health treatment and overall is more upbeat and in better condition (Exhibit 35F [R. 3540–47, reflecting treatment notes from September 24, 2020, through November 28, 2020])." For example, Plaintiff highlights that on November 7, 2020, there appears "a discussion about not scheduling visits or activities back-to-back days and to not set '[t]oo high expectations will lead to disappointments and lower self esteem.'" *Id*. (quoting R. 2544). However, that same note also reflected, *inter alia*, that Plaintiff "expressed today that in only 2 sessions she feels less fragmented and connect things. Responded well to advice about scheduling, changing negative thoughts to coping self talk and the info about trauma work." R. 2544. Plaintiff also points to a November 14, 2020, note in which she reported "a lot of pain that week, *possibly due to weather*, and had cancelled social gatherings and spent time in bed." *Plaintiff's Brief*, ECF No. 8, p. 21 (citing R. 2545) (emphasis added). However, the note also reflects that Plaintiff further "reported being able to keep her mood up and to remain positive and hopeful by doing self-talk and taking an hour at a time. spoke about childhood friend that she

speaks to weekly and other friends and family members." R. 2545. Similarly, while Plaintiff

points to a progress note dated November 21, 2020, in which she reported to her psychologist

that she was struggling with pain and nightmares that week, *Plaintiff's Brief*, ECF No. 8, p. 21

(citing R. 25456), the same note also reflects that Plaintiff "always seems to be relieved and

empower[ed] when she gains insight and able to fit the pieces together. Her coping skills and

insight are progressing & increase her mental functioning. Pt seems to trust enough in order to

share her trauma." R. 2546.

     In short, the ALJ fairly characterized this evidence and appropriately relied on it when

finding medical improvement as of July 17, 2020. To the extent that Plaintiff insists that this

Court should reach a different result based on this evidence, Plaintiff is asking the Court to

improperly reweigh the evidence, which it cannot do. *See Chandler v. Comm'r of Soc. Sec.*, 667

F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their

own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of

Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not

uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve

that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Marissa M.*, 2023

WL 143848, at *6.

     Accordingly, the ALJ's finding that medical improvement occurred as of July 17, 2020,

enjoys substantial support in the record.

     **B.**     **Work That Existed in Significant Numbers**

     Plaintiff raises a number of challenges to the ALJ's finding that, as of July 17, 2020,

Plaintiff could perform work that existed in significant numbers in the national economy.

*Plaintiff's Brief*, ECF No. 8, pp. 22 – 26; *Plaintiff's Reply Brief*, ECF No. 11, For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must determine whether the claimant, considering her RFC, age, education, and work experience, could perform jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 404.1594(a). The Commissioner bears the burden of proof on this issue. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). *See also Keegan*, 744 F.2d at 975.  "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). Before relying on vocational expert testimony, however, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] and information in the Dictionary of Occupational Titles[("DOT").]" SSR 00-4p, 2000 WL 1898704, at *1. "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)). While an "ALJ's failure to comply with these requirements *may* warrant remand in a particular case[,]" "this Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (citations omitted) (emphasis added); *see also Jackson v. Barnhart*, 120

F. App'x 904, 905–06 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit

testimony about potential conflicts between this portion of the VE's testimony and the DOT, the

error was harmless. Where substantial evidence supports the ALJ's opinion and where the failure

to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the

ALJ's decision.") (citations omitted).

In the case presently before this Court, the ALJ found that Plaintiff's RFC as of July 17,

2020, enabled her to perform other jobs that existed in significant numbers in the national

economy, namely, cutter and paster of press clippings (12,000 jobs in the national economy);

assembler (5,000 jobs in the national economy); and bench hand (6,000 jobs in the national

economy), and that Plaintiff's disability therefore ended on July 17, 2020. R. 46 –47. In

challenging this finding, Plaintiff first argues that the ALJ failed to resolve an inconsistency

between the DOT and the vocational expert's testimony. *Plaintiff's Brief*, ECF No. 8, pp. 22–24;

*Plaintiff's Reply Brief*, ECF No. 11, pp. 2–3. Plaintiff specifically contends that the vocational

expert agreed that the RFC's restrictions to simple and unskilled tasks were inconsistent with the

DOT's definition for cutter and paster of press clippings, which requires a reasoning level 2, *i.e.*,

an ability to carry out "detailed" instructions.[4] *Plaintiff's Brief*, ECF No. 8, pp. 22–24 (citing,

---

[4] "The qualification categories listed by the DOT for each job include the job's Strength level,
General Educational Development ("GED") level, and its Specific Vocational Preparation
("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those
aspects of education (formal and informal) which are required of the worker for satisfactory job
performance.'" *Id.* "GED is broken into three categories: (1) reasoning development, (2)
mathematical development, and (3) language development. . . . Reasoning levels in the DOT
range from level 1 to level 6." *Id.* (citing Appendix C, DOT). GED reasoning level 1 applies
"commonsense understanding to carry out simple one- or two-step instructions" in "standardized
situations with occasional or no variables in or from these situations encountered on the job."
Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry
out detailed but uninvolved written or oral instructions" in "problems involving a few concrete
variables in or from standardized situations." *Id.* Reasoning level 3 applies "commonsense
understanding to carry out instructions furnished in written, oral, or diagrammatic form" in

*inter alia*, R. 82–83); *Plaintiff's Reply Brief*, ECF No. 11, pp. 2–3. Plaintiff also contends that the job of cutter and paster of press clippings is obsolete. *Plaintiff's Brief*, ECF No. 8, pp. 24–25; *Plaintiff's Reply Brief*, ECF No. 11, p. 3. Even assuming, without deciding, that Plaintiff is correct that the ALJ erred in relying on this job, any such error is harmless. As previously noted, the vocational expert identified two additional jobs—*i.e.*, assembler and bench hand—that could be performed by someone with Plaintiff's vocational profile and Plaintiff's RFC beginning on July 17, 2020, and testified that there existed approximately 5,000 and 6,000, respectively, such jobs in the national economy. R. 46–47, 79–81.

Plaintiff contends that 11,000 jobs (*i.e.*, the total number of the two jobs) in the national economy does not constitute a significant number of jobs. *Plaintiff's Brief*, ECF No. 8, pp. 25–26; *Plaintiff's Reply Brief*, ECF No. 11, pp. 3–4. This Court disagrees. "[T]here is no precise estimate for what significant numbers' of jobs under the Social Security Act." *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (citing 20 C.F.R. § 404.1566). This Court has previously found that fewer than 11,000 jobs in the national economy is significant. *See Emilia N. v. Comm'r of Soc. Sec.*, No. CV 21-18677 (RMB), 2022 WL 14834594, at *7–9 (D.N.J. Oct. 26,

---

"problems involving several concrete variables in or from standardized situations." *Id.* "SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id.* (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)–(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." *Id.* at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

2022) (finding that 1313 jobs—547 type copy examiner jobs and 766 loader jobs—available in the national economy were significant); *Benton v. Comm'r of Soc. Sec.*, No. 1:18-CV-09478-NLH, 2019 WL 2285490, at *7 (D.N.J. May 29, 2019) (finding 1,940 jobs in the national economy significant); *cf. Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) ("In light of our determination in *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987), that 200 jobs in the regional economy was a 'clear indication' that other meaningful work in the national economy existed, we conclude that the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant numbers in the national economy."); *Emilia N.*, 2022 WL 14834594, at *8 n. 5 (rejecting attempt to distinguish *Craigie* and *Ahmad* where those cases had relied on regional numbers instead of national numbers because "[t]he ALJ does not have to conclusively prove the existence of these jobs in the national economy. Evidence that has a tendency to support the proposition can be sufficient").

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports the ALJ's determination in this regard.

## V.   CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  June 3, 2024                                  *s/Norah McCann King*
                                                NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE